# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BARON BRAND,
  Petitioner,

vs.

WARDEN, CORRECTIONAL
RECEPTION CENTER,[1]
  Respondent.

Case No. 1:18-cv-697

Bertelsman, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody, has filed a pro se petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, challenging his Hamilton County, Ohio, convictions. (Doc.

1). This matter is before the Court on the petition (Doc. 1) and respondent's return of writ (Doc.

7), to which petitioner has replied (Doc. 10).

For the reasons stated below, the petition should be denied.

## I. PROCEDURAL HISTORY

### State Trial Proceedings and Direct Appeal

On May 19, 2014, a Hamilton County, Ohio, grand jury returned a sixteen-count

indictment charging petitioner with two counts of aggravated murder (Counts One and Three),

two counts of murder (Counts Two and Four), two counts of felonious assault (Counts Five and

Six), three counts of aggravated robbery (Counts Seven, Eight, Nine), five counts of having a

weapon while under a disability (Counts Ten, Eleven, Twelve, Fifteen, and Sixteen), one count

of trafficking in heroin (Count Thirteen), and one count of possession of heroin (Count

Fourteen). With the exception of the five counts of having a weapon while under a disability and

---

[1]According to the Ohio Department of Rehabilitation and Correction's website, petitioner is currently incarcerated at the Pickaway Correctional Institution. The **Clerk of Court** is **DIRECTED** to send a copy of this Report and Recommendation to petitioner at the address he provided to the Court and also to his name and inmate number (A719783) at the Pickaway Correctional Institution. However, petitioner is advised that it is his responsibility to update the Court on any changes to his address.

the two drug charges, all counts carried accompanying weapon specifications and a repeat-violent-offender specification. (Doc. 6, Ex. 1).

Prior to trial, petitioner pleaded guilty to trafficking in heroin, possession of heroin, and two counts of having a weapon under disability. (Doc. 6, Ex. 8). The remaining counts, however, were tried to a jury. The Ohio Court of Appeals, First Appellate District, provided the following summary of the facts that led to petitioner's convictions:[2]

> On the evening of May 2, 2014, Courtney McKinney had been at her apartment with [her cousin, Keelin] Broach[,] and [Beyoncia] Willis. Broach was a known drug dealer and had brought drugs to McKinney's apartment. McKinney left Broach and Willis at her apartment while she went out with a friend to several bars. Upon returning home in the early hours of May 3, McKinney entered the interior lobby of her apartment building. As she began to walk up the stairs to her second-floor unit, she noticed someone, whom she later identified as Devin Isome, at the top of the stairs. Isome pulled out a gun and stated "Where the money at?" She told him that she only had $50 and a credit card, to which Isome responded, "Bitch, I don't want no $50 or no credit card." He then indicated towards her apartment and asked, "Who in here?" Isome was wearing a black hoodie and jeans. The hoodie was tied under his chin, but McKinney had no problem seeing his face.

> McKinney attempted to run back outside, but a second person, later identified by McKinney as Brand, approached her from the basement as she was on the second step. Brand had on a white hoodie, also tied under his chin. He stated, "Nah, we going up in here," and he put a gun to her back as he walked her up the stairs. Isome put his gun to her head as she unlocked her apartment door. The lights were on in McKinney's apartment, and Broach and Willis were lying on a couch. Brand and Isome ordered McKinney onto a couch and Broach onto the ground, and they repeatedly demanded money. Broach told them that he did not have money, but that they could have his dope that was on the table. Brand took items off the table and tied Broach's hands behind his back with the jogging pants that Broach had been wearing. Brand then placed a phone call over speakerphone and told the

---

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has not presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

person whom he had called, "It aint [sic] no money." McKinney heard the other person respond, "Kill them," and she immediately ran into her bedroom and jumped out the window. She heard a gunshot as she was jumping, and she realized that she had been shot in the arm once she hit the ground. McKinney heard two more gunshots as she ran to the nearest house with lights on.

A resident of the house to which McKinney had fled called the police, and McKinney was taken to a hospital. Cincinnati Police Officer Thomas Stanton had been one of the responding officers, and he had followed a blood trail leading to the side of McKinney's apartment building. He saw that the blood trail had originated from a broken second-story window. Officer Stanton secured the apartment building. The front door to McKinney's apartment was slightly ajar, but Officer Stanton had to force it open because a body had been obstructing it. Upon entering, Officer Stanton immediately saw two deceased victims. Both Broach and Willis had been shot in the head and had died from the resulting injuries.

Criminalist Kathy Newsome processed the crime scene in McKinney's apartment. She found drug paraphernalia, specifically a baggie of marijuana, a scale, and a box of plastic bags. She also found several pieces of copper jacketing and shell casings. Criminalist Newsome identified the ammunition as Dynamic Research Technologies ("DRT"), a brand she had never before encountered. Kevin Lattyak, a firearms supervisor with the Hamilton County Coroner's Officer [sic], examined the casings that had been collected. In Lattyak's opinion, the casings had been fired from a semi-automatic handgun, specifically a Bersa.

Detectives Jake Wloszek and Colin Vaughn interviewed McKinney at the hospital around 6:30 a.m. on May 3, 2014. Although McKinney's medical records indicated that she had been intoxicated, McKinney stated that she had only consumed two alcoholic beverages and had not been drunk. Detective Vaughn noticed that McKinney was very upset, but did not seem intoxicated. McKinney told the detectives that the first suspect that she had encountered was a male black, approximately 5'8", and 21–22 years of age. She described the second suspect as a light-skinned black male, shorter than the first suspect, and as having been 20–28 years old.

Detective Vaughn again interviewed McKinney on May 9, 2014. In this interview, McKinney described the first suspect as a male black that was 5'6" or taller. She described the second suspect as again being shorter than the first, approximately 5'3", stocky with a yellow complexion, and around 22–23 years old. Testimony revealed that Isome was actually 6'4" and was several inches taller than Brand.

Detective Vaughn had developed Brand as a suspect following Brand's arrest on unrelated charges, and he prepared a photographic lineup containing a picture of

Brand for McKinney to examine. Vaughn was aware of the discrepancies between Brand's height and the heights contained in McKinney's various descriptions when he made the lineup, but he believed that McKinney's ability to accurately judge height had been affected because she had been looking down on Brand from the stairwell when she first saw him. Detective Terry McGuffey served as blind administrator and showed McKinney the photographic lineup. Upon seeing photograph number three, McKinney began to cry and stated, "That's him. That's that motherfucker right there. I'm a thousand percent that that's him." Brand was the subject of photograph number three. Upon seeing photograph number six, McKinney responded that the picture "looks similar to the tall one. I'm iffy about him." Detective Vaughn did not construe McKinney's statements to be an identification of the person in photograph number six as one of the suspects, so he conducted no follow-up investigation of that person.

McKinney developed Isome as a suspect through her own investigation, and she showed Detective Vaughn a picture of Isome obtained from Facebook. On May 12, 2014, Detective Vaughn had a blind administrator show McKinney two additional photographic lineups. McKinney identified no persons in the first lineup. But in the second lineup that she was shown, McKinney identified Isome as the first suspect that she had encountered.

Christopher Hill testified at trial that he had been incarcerated on various charges at the same time that Brand had been incarcerated for the offenses in this case. Hill and Brand had a conversation in jail about their respective cases. Brand told Hill that a woman named Courtney had arranged with him to set up Broach for a robbery. According to Brand, he had followed Courtney home from a club with the intention of taking Broach's money and heroin. Brand further told Hill that mayhem had ensued, and that he had shot at Courtney, who had fled by jumping out a window. Before he left with a couple ounces of heroin and a couple thousand dollars, Brand shot Broach and another woman to eliminate any witnesses.

Evidence was further presented to the jury that Brand had been arrested on unrelated offenses on May 8, 2014. As part of that arrest, a search warrant was executed at Brand's residence at 5460 Beechmont Avenue. When executing the warrant, officers discovered a large amount of heroin, approximately $1,900, a .380 Bersa handgun, and a box of DRT .380 cartridges. Detective Vaughn testified that he had never seen a DRT head stamp on a cartridge case prior to this case, and that Brand had admitted that the DRT ammunition, the weapon, and the heroin found at the Beechmont residence belonged to him.

Over Brand's objection, the state presented testimony from Laurie Bellow, a retired detective from the Forest Park police department. Bellow testified that in 2010, she had been dispatched to the scene of a robbery. In that case, money, a cell phone,

4

and marijuana had been stolen from an individual known to sell drugs, and the victim had been shot during the robbery. Bellow explained that she had developed Brand as a suspect in that case, and that he had ultimately been convicted of the resulting charges.

Brand presented testimony from Melissa Berry, an expert in the psychology associated with eyewitness identification. Although Berry could not state with certainly that McKinney's eyewitness identification had been inaccurate, she explained that there were many factors present in this case that could have had an impact on the identification. She testified that McKinney's attention was divided between two suspects; that both suspects had their faces somewhat obscured by a hood; that witnesses often focus on the presence of a weapon rather than focus on other features of a suspect; and that severe stress can impair a person's memory, causing the person to imbed information learned post-event into their memory of the actual event. She further explained that both intoxication and exposure time can affect an identification.

The jury returned verdicts finding Brand guilty of all offenses and specifications, and the trial court separately found Brand to be a repeat-violent offender. Various offenses merged for purposes of sentencing, and the trial court issued an entry convicting Brand of, and imposing sentence on, the following offenses: two counts of aggravated murder, felonious assault with accompanying weapon and repeat-violent-offender specifications, aggravated robbery, and two counts of having a weapon while under a disability.

*State v. Brand*, No. C-150590, 2016 WL 6269368, at *1-4 (Ohio App. Oct. 26, 2016). The trial

court sentenced petitioner to a total effective sentence of life without parole. The jury was

unable to reach a verdict with respect to petitioner's co-defendant, Devin Isome. (*See* Doc. 6-23,

at PageID 2223).

Petitioner, through new appellate counsel, raised the following five assignments of error

on direct appeal:

1. The trial court erred to the prejudice of the appellant in that it convicted him based on insufficient evidence and that it convicted him against the manifest weight of the evidence.

2. Appellant was deprived of his right to a fair trial when the trial court admitted evidence of other acts in violation of the Fourteenth Amendment.

3. The trial court erred to the prejudice of the appellant in permitting a read back of portions of testimony of the state's witness depriving appellant of a fair trial and due process of law in violation of the Fourteenth Amendment to the United States Constitution.

4. The state engaged in prosecutorial misconduct which deprived appellant of a fair trial and due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

5. Appellant was deprived of his right to effective assistance of counsel in violation of his Sixth and Fourteenth and related Ohio constitutional rights.

6. The trial court erred to the prejudice of appellant in failing to grant the motion to suppress the eyewitness identification in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

(Doc. 6, Ex. 17). On October 26, 2016, the Ohio Court of Appeals affirmed petitioner's convictions. *Brand*, 2016 WL 6269368, at \*8. On December 12, 2016, petitioner, through counsel, appealed to the Ohio Supreme Court, raising the following six assignments of error:

1. Where a defendant is convicted based upon insufficient evidence or where a conviction is against the manifest weight of the evidence, the conviction is a violation of the due process clause of the Constitution.

2. Where the trial court admits evidence of other acts where there is no demonstration of a unique or identifiable plan, it is a violation of the defendant's right to a fair trial and due process of law.

3. Where the trial court allows the jury to re-hear testimony of only portions of one of the state's witnesses during jury deliberations the Appellant is deprived of a fair trial and due process of law.

4. Where the prosecutor engages in repeated acts of misconduct which affect the fairness of the trial, the conviction must be set aside and a new trial ordered.

5. The failure to present and raise meritorious legal arguments constitutes ineffective assistance of counsel.

6. Where the eyewitness is shown a lineup and the lineup photographs do not match the description of the perpetrator, the lineup is unduly suggestive and likely to lead to misidentification.

(Doc. 6, Ex. 20, at PageID 194-203). The Ohio Supreme Court denied further review. *State v. Brand*, 77 N.E.3d 988 (Ohio 2017) (table).

## Federal Habeas Corpus

In the instant habeas petition, plaintiff raises five grounds for relief:

**GROUND ONE**: Petitioner's convictions are based on insufficient evidence.

**GROUND TWO**: Petitioner's right to due process of law was violated when the trial court admitted other acts evidence.

**GROUND THREE**: Petitioner's right to a fair trial as guaranteed by the due process clause of the 14th Amendment was violated due to prosecutorial misconduct.

**GROUND FOUR**: Petitioner was denied effective assistance of counsel.

**GROUND FIVE**: Petitioner's due process rights were violated when the trial court denied petitioner's motion to suppress eyewitness identification in violation of the 5th and 14th Amendments to the United States Constitution.

(Doc. 1, at PageID 5-10, 16).

Respondent has filed a return of writ in opposition to the petition. (Doc. 7). According to respondent, petitioner's grounds for relief are procedurally defaulted or without merit. Petitioner has filed a traverse. (Doc. 10).

## II. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated

7

on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable. . . .* This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not

have to give any explanation for its results, *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim

addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. _, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at _, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at _, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 412).

**A. Ground One Should Be Denied.**

In Ground One, petitioner asserts that insufficient evidence supports his convictions. Although petitioner does not expressly state which of his convictions he is challenging, the Court understands Ground One to mirror petitioner's argument on direct appeal, challenging the sufficiency of the evidence that was presented at trial to establish his guilt beyond a reasonable doubt on the charges for aggravated murder, aggravated robbery, felonious assault, and having a weapon while under a disability. (*See* Doc. 1, at PageID 6 (checking box indicating that

petitioner raised this issue in his direct appeal)). On direct appeal, petitioner advanced two arguments: (1) there was insufficient evidence to prove that he was involved in the crimes, and (2) there was insufficient evidence to prove that a robbery occurred. (Doc. 6, Ex. 17, at PageID 119).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing petitioner's constitutional sufficiency-of-the-evidence claim on direct appeal. The court considered the claim in conjunction with a state-law claim challenging the weight of the evidence. The court rejected both assignments of error, reasoning in pertinent part as follows:

> Brand was convicted of two counts of aggravated murder, aggravated robbery, felonious assault, and having a weapon while under a disability. He advances two specific arguments in support of this assignment of error. First, he challenges McKinney's identification and contends that there was insufficient evidence to prove that he was involved in these crimes.
>
> Extensive evidence was presented regarding McKinney's identification of Brand. Although Brand had a hood tied around his face during the commission of these offenses, McKinney testified that his face had not been obscured and that she had been able to clearly view his facial features. Evidence further demonstrated that McKinney had time to see Brand both in the lobby and stairwell of her apartment building, and in her apartment, and that both areas were well lit. Further, while evidence was presented regarding the discrepancies in McKinney's description of Brand, particularly with respect to his height, the jury was also presented with testimony that McKinney's observations could have been affected by the fact that she had first encountered Brand while she stood a few steps above him.
>
> Defense counsel vigorously cross-examined McKinney and highlighted the discrepancies in her identification, but the state presented additional evidence at trial supporting her identification of Brand as the perpetrator of these offenses. The jury heard evidence that DRT was not a common brand of ammunition, but that it had been used in the commission of these offenses, that it had been found in Brand's apartment, and that Brand had admitted ownership of the ammunition found in his apartment. The jury was additionally presented with testimony from Christopher Hill that Brand had admitted his role in these offenses, as well as described in significant detail to Hill what had occurred. The jury was in the best position to

view the credibility of these witnesses, and we will not second guess its determination that McKinney's identification of Brand was credible.

Brand further argues that the record contains no evidence that anything had been taken from McKinney's apartment when Broach and Willis were killed. The record belies this contention. McKinney testified that she saw Brand grab items off of a table in her apartment. And Christopher Hill testified that Brand had told him that he had taken both heroin and money from McKinney's apartment.

We find that Brand's convictions were supported by both the sufficiency and the weight of the evidence. The first assignment of error is overruled.

*Brand*, 2016 WL 6269368, at *4-5.

The well-settled standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship*, 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in

testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher,* 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown,* 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson,* but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011); *Anderson v. Trombley,* 451 F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

[W]e cannot rely simply upon our own personal conceptions of what evidentiary

showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*.[3] As to petitioner's contention that there was insufficient evidence connecting him to the crimes, McKinney, one of the victims, identified petitioner with a high degree of certainty as a perpetrator of the crimes from a photo array within days of the crimes (Doc. 6-17 (transcript), at PageID 1720, 1726) and again at trial (Doc. 6-17 (transcript), at PageID 1737). The State also presented evidence that petitioner confessed his involvement in the crimes to another inmate, Christopher Hill (Doc. 6-18 (transcript), at PageID 1910-22), and that the unusual brand of shell casings found at the crime scene matched ammunition found in petitioner's apartment (Doc. 6-16 (transcript), at PageID 1418-29, 1613-18; Doc. 6-18, at PageID 1989-93, 2040). Although petitioner questions the reliability of these witnesses and of the shell-casing evidence (*see, e.g.,* Doc. 6, Ex. 17, at PageID 119), it is "the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

---

[3]Although the Ohio Court of Appeals did not cite Supreme Court precedents in addressing petitioner's sufficiency-of-evidence claims, the court utilized the proper standard of review established by the Supreme Court in *Jackson* in assessing whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that petitioner was guilty of the charges. *See Brand,* 2016 WL 6269368, at *4.

inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. *See also United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) ("Attacks on witness credibility are simply challenges to the quality of the government's evidence and not the sufficiency of the evidence.") (quoting *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991)). *See also Gibbs v. Kemna*, 192 F.3d 1173, 1176 (8th Cir. 1999) (finding that petitioner's challenge to the reliability of the eyewitnesses' identifications went to credibility, not sufficiency of the evidence, and "credibility is for the jury to decide"). The decision of the Ohio Court of Appeals finding there was sufficient evidence identifying petitioner as a perpetrator of the crimes was not an unreasonable application of the *Jackson* standard. *See, e.g., Hunter v. Burt*, No. 19-1460, 2019 WL 5571472, at *1 (6th Cir. Sept. 5, 2019) (finding that jurists of reason would not debate district court's determination that state appellate court reasonably determined that there was sufficient identification evidence where the prosecution presented testimony from witnesses who identified the petitioner as a perpetrator).

As to petitioner's additional contention that there was no evidence that a robbery occurred because there was no evidence that anything was missing from the apartment or any of its occupants (Doc. 6, Ex. 17, at PageID 119), the Ohio Court of Appeals reasonably rejected this claim.

McKinney testified that when she returned home on the night of the incident, petitioner and another perpetrator forced McKinney into her apartment at gun point. (Doc. 6-17 (transcript), at PageID 1680-82; 1685-89, 1691-92). McKinney's cousin, Broach, and friend, Willis, were inside the apartment on a couch. (Doc. 6-17 (transcript), at PageID 1694). McKinney testified that petitioner and the other perpetrator told Broach to get on the ground and

McKinney to sit on the other couch. (Doc. 6-17 (transcript), at PageID 1696-97). McKinney further testified that the perpetrators repeatedly demanded money and that petitioner took items from a table in the apartment. (Doc. 6-17 (transcript), at PageID 1698-1701). Further, Hill testified that petitioner admitted taking heroin and money from McKinney's apartment. (Doc. 6-18 (transcript), at PageID 1922). Based on this testimony, the state appellate court reasonably concluded that the state presented sufficient evidence of a robbery. *See Jackson,* 443 U.S. at 319.[4]

Ground One does not warrant habeas corpus relief.

## B. Ground Two Should Be Denied.

In Ground Two, petitioner asserts that his right to due process was violated when the trial court admitted other-acts evidence. As with Ground One, the Court understands Ground Two to mirror the other-acts issue raised on direct appeal. (*See* Doc. 1, at PageID 7 (checking box indicating that petitioner raised this issue in his direct appeal)). The Ohio Court of Appeals decided the other-acts issue as follows:

> Brand argues that he was deprived of his right to a fair trial when the trial court erred by admitting other-acts evidence from retired detective Laurie Bellow, who testified that Brand had previously been involved in the robbery and shooting of a known drug dealer in 2010. We review the trial court's admission of evidence for an abuse of discretion. *See State v. Noling,* 98 Ohio St.3d 44, 2002–Ohio–7044, 781 N.E.2d 88, ¶ 43.

---

[4]Petitioner argues that the length of time the jury deliberated in his case supports his insufficiency of the evidence claim. (*See* Doc. 10, at PageID 2534). However, he does not site any Supreme Court authority in support of this proposition, and other courts have rejected such claims. *See, e.g., Hainey v. Phelps,* Civ. No. 08-272-SLR, 2011 WL 2708621, at *7 (D. Del. July 12, 2011) ("Although petitioner contends that the jury's lengthy deliberations and temporary deadlock supports his challenge to the sufficiency of the evidence, there is no Supreme Court precedent indicating that the length of a jury's deliberations is a factor affecting a sufficiency challenge."); *see also Marx v. Hartford Accident & Indem. Co.,* 321 F.2d 70, 71 (5th Cir.1963) ("We cannot hold an hourglass over a jury. If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial.").

Generally, under Evid. R. 404(A), evidence of a person's character is not admissible to prove action in conformity therewith. However, under Evid. R 404(B), evidence of other crimes may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Here, the state had sought to admit evidence of Brand's prior crime to establish his identity as the perpetrator of the instant offense.

Other-acts evidence may be used to prove identity when the evidence establishes a defendant's modus operandi, or behavioral fingerprint. *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994). When used for this purpose, the other-acts evidence proves the defendant's identity by demonstrating that the defendant "has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *Id.*, quoting *State v. Smith*, 49 Ohio St.3d 137, 141, 551 N.E.2d 190 (1990). The other acts need not be identical to the crime in question, but they must "be related to and share common features." *Id.*

The other-acts evidence introduced in this case established that Brand had been convicted of charges related to his role in the shooting and robbery of a known drug dealer in 2010. Other than the fact that both Brand's prior crime and the instant offense involved the robbery of a known drug dealer, the offenses shared little in common. While the victim of the prior offense was shot, the victims in the instant case were executed to prevent them from becoming witnesses to the crime. The robbery of a drug dealer is not an uncommon crime. Brand's involvement in two such crimes, with the absence of any other common features linking the offenses, did not establish a unique scheme or plan identifiable only to him. We hold that the trial court abused its discretion in admitting the other-acts evidence.

However, in light of the other evidence of Brand's guilt, as described in our resolution of the first assignment of error, the admission of this evidence did not result in prejudicial error or affect the outcome of the case. *See State v. Bryan*, 101 Ohio St.3d 272, 2004–Ohio–971, 804 N.E.2d 433, ¶ 127. Brand was not deprived of his right to a fair trial. The second assignment of error is overruled.

*Brand*, 2016 WL 6269368, at *5-6.

"[H]abeas review does not ordinarily extend to state court rulings on the admissibility of

evidence." *Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir. 2001) (citing *Burgett v. Texas*, 389

U.S. 109, 113–14, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967)). Furthermore, "errors of state law,

especially errors based on a trial court's evidentiary rulings, do not, in and of themselves, violate

17

the constitution." 274 F.3d at 357 (citing *Neumann v. Jordan,* 84 F.3d 985, 988 (7th Cir.1996)).

"When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Id.* "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend [ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F.3d 542, 552 (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)).

"A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb. The kind of foundational unfairness and arbitrariness needed to show that a flawed evidentiary ruling rises to the level of a due process violation is not a broad category[.]" *Burger v. Woods,* 515 F. App'x 507, 510 (6th Cir. 2013). "'[G]arden-variety' character-evidence error does not 'cross the constitutional threshold' of due process." *Id.* (quoting *Watkins v. Meloy,* 95 F.3d 4, 7 (7th Cir. 1996). *See also Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003) ("[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.") Petitioner has not demonstrated that the mistaken admission of other-acts evidence violates the Due Process Clause. *See Burger,* 515 F. App'x at 510 ("[T]he Supreme Court to our knowledge . . . has never identified an improper-character-evidence case that falls into [the category of due process violations].") Even assuming *arguendo* that petitioner could make such a showing, petitioner has not shown that other-acts evidence was "material in the sense of a crucial, critical highly significant factor." *Burger,* 515 F. App'x at 510 (quoting *Brown v. O'Dea,* 227 F.3d 642, 645 (6th Cir. 2000)). Rather, the other evidence of petitioner's guilt set forth above in the Court's

discussion of Ground One, including McKinney's identification testimony, Hill's testimony that petitioner confessed to his involvement in the crimes, and the evidence that the unusual brand of shell casings found at the crime scene matched ammunition found in petitioner's apartment, was strong.

Ground Two does not warrant habeas corpus relief.

## C. Ground Three Should Be Denied.

In Ground Three, petitioner asserts that he was denied a fair trial due to prosecutorial misconduct. As with the previous two grounds, the Court understands petitioner to be raising the same prosecutorial-misconduct claim that he raised on direct appeal. (*See* Doc. 1, at PageID 9 (checking box indicating that petitioner raised this issue in his direct appeal)). There, petitioner asserted that the prosecutor engaged in misconduct by: (1) making improper comments during closing argument; (2) eliciting improper hearsay from McKinney on direct examination; and (3) eliciting improper opinion evidence from a police officer. (Doc. 6, Ex. 17, at PageID 125-28). Respondent contends that Ground Three is either procedurally defaulted or fails on the merits. For the reasons below, the Court finds that Ground Three's first sub-claim is procedurally defaulted and that the remaining two sub-claims fail on the merits.

In addressing petitioner's prosecutorial misconduct claim, the Ohio Court of Appeals found:

> Brand argues that he was deprived of a fair trial due to misconduct committed by the prosecutor.
>
> Brand first argues that the prosecutor made multiple improper comments during closing arguments. To have deprived a defendant of a fair trial, a prosecutor's remarks must have been improper and have prejudicially affected the defendant's substantial rights. *State v. Smith,* 130 Ohio App.3d 360, 366, 720 N.E.2d 149 (1st

Dist.1998). The prosecutor is generally entitled to a wide degree of latitude during closing argument. *State v. Smith,* 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). The prosecutor's statements must not be viewed in isolation, but in light of the entire closing argument. *State v. Kelly,* 1st Dist. Hamilton No. C–010639, 2002–Ohio–6246, ¶ 22.

We have reviewed each remark made by the prosecutor during closing argument that Brand has cited. Brand failed to object to any of these comments, and consequently has forfeited all but plain error. *Id.* We find that a majority of the remarks cited by Brand were not improper. And to the extent that any remark could be considered improper, it certainly did not amount to plain error affecting the outcome of the proceedings.

Brand next argues that the prosecutor elicited improper hearsay testimony from McKinney when she testified that she had heard someone on speakerphone tell Brand to "kill them." But because this testimony was used not to prove the truth of the matter asserted, but to explain why McKinney jumped out of a window, it was not improper. The prosecutor also mentioned this telephone call and instruction to "kill them" during closing argument, arguing that Brand had intended to kill Broach and Willis because he had been instructed to do so. But Brand failed to object to this comment, and it did not amount to plain error.

Brand further contends that the prosecutor improperly elicited opinion testimony from Detective Vaughn in violation of Evid. R. 703. He argues that the prosecutor used Detective Vaughn as an expert witness on drug trafficking. We find the prosecutor's questioning of Detective Vaughn regarding drug terminology and value to be entirely proper. The detective was testifying based on his knowledge and experience as a police officer, and not as an expert witness. We further find no error in the additional testimony from Detective Vaughn cited by Brand. The testimony was based on Vaughn's investigation, observations, and knowledge and experience as an officer.

We hold that Brand was not deprived of a fair trial due to prosecutorial misconduct, and we overrule the fourth assignment of error.

*Brand,* 2016 WL 6269368, at *6-7.

Petitioner does not dispute the state appellate court's finding that counsel failed to object during closing argument to the challenged comments. (*See* Doc. 10, at PageID 2537, arguing that counsel's failure to object constituted ineffective assistance of counsel). In recognition of

the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 847-48 (1999); *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner fails to comply with a state procedural rule that required her to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. ... Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson*, 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default when he failed to object to the remarks in closing arguments cited as examples of misconduct at the time those comments were made. *See Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (recognizing Ohio's long-standing contemporaneous objection rule). Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005) (citing *Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003)); *see also State v. Murphy, 1A1* N.E.2d 765, 788 (Ohio 2001) (pointing out that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See, e.g., Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin,* 632 F.3d at 315.

The Ohio Court of Appeals clearly enforced the state procedural bar to review when it pointed out that review of the assignments of error presented in Ground Three's first sub-claim was for "plain error." Under well-settled Sixth Circuit precedent, the state appellate court's plain-error review did "not constitute a waiver of state procedural default rules." *See, e.g., Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz,* 869 F.2d 281, 284-85 (6th Cir. 1989)); *see also Goodwin,* 632 F.3d at 315. The Ohio Supreme Court's later unexplained entry summarily denying petitioner's application for leave to appeal must be

presumed to rely on the same state procedural ground. *See Taqwiim v. Johnson*, No. 99-3425, 2000 WL 1234322, at \*3 (6th Cir. Aug. 22, 2000) (citing *Levine v. Torvik*, 986 F.2d 1506, 1517 n.8 (6th Cir. 1993), and *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

Having procedurally defaulted the first sub-claim in Ground Three, petitioner may now obtain review of the issue by this Court only by showing either cause and prejudice or a miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

Petitioner seeks to show cause by arguing that trial counsel was ineffective for failing to object to the allegedly improper arguments at issue in the first sub-claim. Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of counsel claim was itself procedurally defaulted. *See Murray*, 477 U.S. at 488-89. *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).

While petitioner raised the issue of trial counsel's alleged ineffectiveness before the Ohio appellate court, that court declined to review the claim because petitioner failed to follow the court's appellate procedural rules. The Ohio appellate court held:

> In his fifth assignment of error, Brand argues that he received ineffective assistance from his trial counsel. He contends that his counsel failed to object to numerous instances of hearsay and prosecutorial misconduct, but he provides no citation to the record of specific examples of ineffectiveness. Consequently, we disregard this assignment of error pursuant to App. R. 12(A)(2). *See State v. Rucker*, 1st Dist. Hamilton No. C–110082, 2012–Ohio–185, ¶ 32.

*Brand*, 2016 WL 6269368, at \*7.

Rule 12(A)(2) of the Ohio Rules of Appellate Procedure provides in relevant part that the appellate court can disregard an assignment of error if the party raising it fails to identify in the

record the error upon which the assignment of error is based. Ohio App. R. 12(A)(2). Petitioner failed to follow the appellate rule because he failed to cite to the record. Application of this rule has been determined to be an adequate and independent state ground upon which to foreclose relief since it "did not require review of any merits and it had a discernable standard of application." *Banks v. Bradshaw*, No. 1:05-cv-1141, 2008 WL 4356955, at *11 (N.D. Ohio Sept. 17, 2008).

Nor has petitioner established cause to excuse the default of his ineffective-assistance-of-trial-counsel claim. Petitioner is unable to prevail on any argument that his appellate counsel's failure to properly raise this claim on appeal constitutes cause because the claim of ineffectiveness of appellate counsel was itself defaulted by petitioner, who never raised such a claim in the state courts. (*See* Doc. 1, at PageID 3) (checking the box "No" where asked, "Other than the direct appeal listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?"). "Under Ohio law, a criminal defendant must raise his ineffective assistance of appellate counsel claim in an application for reopening (i.e., a motion for delayed reconsideration) filed 'in the court of appeals where the alleged error took place.'" *Fautenberry v. Mitchell*, 515 F.3d 614, 639 (6th Cir. 2008) (quoting *State v. Murnahan*, 584 N.E.2d 1204, 1209 (1992)); *see also Williams v. Lazaroff*, 648 F. App'x 548, 553 (6th Cir. 2016). Ohio Rule of Appellate Procedure 26(B) permits a criminal defendant to file an application for reopening an appeal within ninety days of the appellate judgment "unless the applicant shows good cause for filing at a later time." Ohio R. App. P. 26(B)(1). Unexhausted ineffective-assistance-of-appellate-counsel claims may be deemed procedurally defaulted when, as here, a criminal defendant fails to provide cause for

failing to file a Rule 26(B) motion for reopening within the prescribed ninety-day period. *See Goldberg v. Maloney*, 692 F.3d 534, 538 n.3 (6th Cir. 2012).

Nor has petitioner demonstrated that failure to consider the defaulted sub-claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence in this context requires a showing of factual innocence, not mere legal insufficiency. *See House v. Bell*, 547 U.S. 518, 538 (2006); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see also Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011). Furthermore, the Supreme Court has stated that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup*, 513 U.S. 298, 329 (1995)); *see also House*, 547 U.S. at 538 (pointing out that the *Schlup* actual-innocence standard is "demanding and permits review only in the extraordinary case") (internal citation and quotation marks omitted). To establish a credible gateway claim of actual innocence, the petitioner must present "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008). No such showing has been made in this case.[5]

---

[5]Petitioner relies on "recent Google research" which he asserts shows that DRT ammunition "could be brought [sic] all over Ohio." (Doc. 10, at PageID 2534, 2541). Petitioner does not identify the source of his information or the time frame he searched. Nor has he established that, to the extent it addresses the relevant time

As for Ground Three's non-defaulted, second and third sub-claims, petitioner asserts that the prosecutor solicited inadmissible hearsay and opinion evidence from, respectively, McKinney and Detective Vaughn. As set forth above, the Ohio Court of Appeals rejected these claims on the merits. *Brand*, 2016 WL 6269368, at *6-7.

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bates v. Bell*, 402 F.3d 635, 640–41 (6th Cir. 2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999), or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). To prevail on a claim of prosecutorial misconduct, the petitioner must show that the alleged misconduct was "both improper and flagrant." *See Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009) (and Sixth Circuit cases cited therein).

The Ohio Court of Appeals found there was no evidentiary error in admitting the challenged testimony from McKinney and Vaughn. This Court is bound by the state court's application of Ohio evidentiary laws. *See, e.g., Battiste v. Miller*, No. 1:17-CV-128, 2019 WL 6221477, at *7 (N.D. Ohio July 8, 2019) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)), *report and*

---

period, such evidence was unavailable at trial. Plaintiff therefore has not come forward with new evidence of actual innocence. Nor is petitioner's claim of actual innocence compelling, given the other evidence of his guilt, including McKinney's identification of petitioner as one of the perpetrators and Hill's testimony regarding petitioner's admissions.

*recommendation adopted*, No. 1:17 CV 128, 2019 WL 4385735 (N.D. Ohio Sept. 13, 2019).

Because the Ohio state courts found that the admission of the evidence was proper, petitioner

cannot rely on the admission of that evidence to demonstrate prosecutorial misconduct. *See*

*Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) ("A prosecutor may rely in good faith on

evidentiary rulings made by the state trial judge and make arguments in reliance on those

rulings."). *See also Gumm v. Mitchell*, 775 F.3d 345, 380 (6th Cir. 2014) ("In light of the fact

that the Ohio Supreme Court (rightly or wrongly) determined that the prosecutor's motion was

proper under Ohio evidentiary rules, it is difficult to say . . . that no reasonable jurist could agree

with the Ohio court's conclusion that the prosecutor's conduct did not violate Petitioner's due

process rights.").

Ground Three does not warrant habeas corpus relief.

**D. Ground Four Should Be Denied.**

Ground Four is the defaulted ineffective-assistance-of-trial-counsel claim addressed in

Ground Three. (*See* Doc. 1, at PageID 10 (checking box indicating that petitioner raised this

issue in his direct appeal)). For the reasons previously discussed, Ground Four is barred by

procedural default.

**E. Ground Five Should Be Denied.**

In Ground Five, petitioner contends that he was deprived of due process based on the trial

court's failure to suppress identification testimony. As with the prior four grounds, the Court

understands Ground Five to mirror the identification issue raised on direct appeal. (*Compare*

Doc. 1, at PageID 16 (petition), with Doc. 6, at PageID 129 (brief on direct appeal)). There,

petitioner asserted that the identification evidence was unduly suggestive because (1) the

28

photographs used in the lineup were not reflective of the description provided by McKinney, and

(2) the investigating officer gave McKinney confirmatory feedback. (*See* Doc. 6, Ex. 17, at

PageID 130).

The Ohio Court of Appeals addressed petitioner's due process claim on the merits,

finding that the procedures used in obtaining the pretrial identifications were not unduly

suggestive or unreliable:

> Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the trial court's application of the law to the relevant facts. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8.

> A two-part test is utilized to determine whether an eyewitness identification must be suppressed. *See State v. Neal,* 1st Dist. Hamilton No. C140667, 2015–Ohio–4705, ¶ 28, citing *Perry v. New Hampshire,* 565 U.S. 228, 238239, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012). First, the reviewing court must determine whether the lineup procedure utilized was suggestive and unnecessary. *Id.* Second, if the lineup is found to be suggestive and unnecessary, the court must determine whether the identification was reliable under the totality of the circumstances. *Id.* If the lineup is not found to be suggestive and unnecessary, a court should not move on to the second step of the analysis. *Id.* at ¶ 29.

> The lineup shown to McKinney was not unduly suggestive. The photographs used in the lineup did not contain height markers. So at the time that the identification was made, McKinney was unaware that she was identifying a suspect that was taller than the height description that she had provided. Further, the lineup was created by Detective Vaughn using Ohio Law Enforcement Gateway, a computer system that pulls photographs from various sources, including the Bureau of Motor Vehicles. The photographs were shown to McKinney individually in sequential order by a blind administrator, who had been completely unaware of any suspect or person contained in the lineup.

> Because the lineup was not unduly suggestive, we need not determine whether McKinney's identification was reliable under the totality of the circumstances. The trial court did not err in failing to grant Brand's motion to suppress.

*Brand,* 2016 WL 6269368, at *7-8.

A conviction based on identification testimony that follows a pretrial identification violates due process when "the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (quoting *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986)) (in turn quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). To exclude such identifications, a defendant must show that the identification procedure was unduly suggestive and the identifications were not otherwise reliable. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

The Court must engage in a two-step analysis in deciding whether the accused's right to due process has been violated through the use of a pretrial identification procedure. *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012). First, "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109 (1977)); *Neil*, 409 U.S. at 198. The defendant bears the burden of proving this element. *Ledbetter*, 35 F.3d at 1071.

If the Court finds that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the trial identification was nevertheless reliable. *Perry*, 565 U.S. at 239 (quoting *Manson*, 432 U.S. at 110). The factors to be considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and

the identification. *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199–200; *United States v. Gatewood,* 230 F.3d 186, 193 (6th Cir. 2000); *Ledbetter,* 35 F.3d at 1071.

"If an identification resulting from an unduly suggestive procedure is nevertheless deemed reliable, it is admissible, '[n]otwithstanding the improper procedure' used by the police." *Wells v. Larose,* No. 1:15-cv-298, 2017 WL 914694, at *16 (N.D. Ohio Jan. 12, 2017) (quoting *Perry,* 565 U.S. at 240), *report and recommendation adopted,* 2017 WL 898007 (N.D. Ohio Mar. 7, 2017); *see also United States v. Washam,* 468 F. App'x 568, 570-71 (6th Cir. 2012) ("To exclude such identifications, a defendant must show that the identification procedure was unduly suggestive and the identifications were not otherwise reliable.").

Petitioner has failed to show that the Ohio Court of Appeals' rejection of his identification claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). A pre-trial identification procedure is unduly suggestive if it "steer[s] the witness to one suspect or another, independent of the witness's honest recollection." *Wilson v. Mitchell,* 250 F.3d 388, 397 (6th Cir. 2001). *See also Schawitsch v. Burt,* 491 F.3d 798, 802 (8th Cir. 2007) ("When there are no differences in appearance tending to isolate the accused's photograph, the identification procedure is not necessarily suggestive.").

Petitioner does not contend that his picture stood out in any way from the other pictures contained in the photographic array shown to McKinney. Nor has he established that the police suggested to McKinney that she pick out a specific individual from the lineup. McKinney testified that the officer administering the line-up did not tell her whom to choose or suggest

anyone. (Doc. 6-12 (transcript), at PageID 453). Rather, petitioner argues that including his picture at all rendered the lineup unnecessarily suggestive because his build did not match the description of the perpetrator's build that McKinney gave to police. Detective Vaughn testified, however, that McKinney may have been mistaken about the perpetrator's height because she had been looking down at him from the stairwell when she first encountered him. *Brand*, 2016 WL 6269368, at *2. Further, petitioner has failed to cite any authority requiring pictures in a photographic array to match in every regard the description provided by the victim. Courts have rejected such a requirement. *See, e.g., Martinez v. Scribner*, No. 06-1715, 2009 WL 2423100, at *10 (C.D. Cal. Aug. 4, 2009) ("Petitioner has failed to cite any authority, and the Court has been unable to locate any authority, holding that a lineup containing photographs of persons not matching the description given by a witness is unconstitutional."); *see also United States v. Scott*, No. 10-00027-01-CR, 2011 WL 5387588, at *6 (W.D. Mo. Oct. 3, 2011) (finding that photographic array containing pictures of individuals older than the perpetrator described by the victim was not unnecessarily suggestive), *report and recommendation adopted*, 2011 WL 5387554 (W.D. Mo. Nov. 7, 2011). Petitioner also argues that the failure of the jury to reach a verdict as to his co-defendant Isome illustrates the weakness in McKinney's identification testimony since she also identified Isome as a perpetrator. (Doc. 10, at PageID 2547). As set forth above, it is the province of the jury to weigh the evidence. *Jackson*, 443 U.S. at 319. Petitioner has not shown that McKinney's identification of him as a perpetrator was the result of an unduly suggestive procedure. *See Neil*, 409 U.S. at 199–200.

Next, the Ohio Court of Appeals reasonably found that petitioner failed to demonstrate that McKinney's in-court identification was tainted by comments Detective Vaughn made

following her selection of petitioner from the lineup.[6] First, petitioner has not established that Detective Vaughn told McKinney that she had selected the correct suspect. McKinney testified at the suppression hearing that Detective Vaughn had told her: "The person that you've identified, *we're not saying that he have anything to do with it*, but he just get arrested." (Doc. 6-12 (transcript), at PageID 493 (emphasis added)). Moreover, even if Detective Vaughn had confirmed McKinney's choice, she had selected petitioner's photograph without hesitation prior to Vaughn's allegedly suggestive comment being made. There is no indication that Detective Vaughn's comment influenced McKinney. *See, e.g., Brantley v. Harry*, No. 2:17-cv-13634, 2019 WL 2247733, at *7 (E.D. Mich. May 24, 2019) ("[A] post-identification affirmation does not render an antecedent lineup procedure unduly suggestive.") (citing *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1046-47 (7th Cir. 2003)). *See also Armour v. Horton*, No. 19-1324, 2019 WL 4667607, at *3 (6th Cir. Aug. 16, 2019) (affirming district court's rejection of claim that post-identification affirmation rendered the lineup procedure unduly suggestive); *United States v. Russell*, 532 F.2d 1063, 1067-68 (6th Cir. 1976) (finding no error of misidentification where witness selected photograph she believed to be the robber before suggestive comment was made).

Ground Five does not warrant habeas corpus relief.

Accordingly, in sum, this Court concludes that petitioner is not entitled to federal habeas corpus relief based on the grounds asserted in his petition.

---

[6]Although the state appellate court did not explicitly address petitioner's post-identification-confirmation claim, this Court presumes that the state court rejected the claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011); *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[7]

3. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.

---

[7] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/20/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BARON BRAND,
    Petitioner,

vs.

WARDEN, CORRECTIONAL
RECEPTION CENTER,
    Respondent.

Case No. 1:18-cv-697

Bertelsman, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).